**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| KIM BERECKIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-CV-42 HEA |
| | ) | |
| LELAND DUDEK, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

Plaintiff Kim Bereckis brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 *et seq.*

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 18, 2025. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medical evidence. For the following reasons, the decision of the Commissioner is affirmed.

## I.  Procedural History

On June 29, 2021, Plaintiff protectively filed her application for DIB and Supplemental Security Income.  (Tr. 264-77).  Plaintiff, who was born in December 1969, alleged she had been unable to work since March 1, 2021, due to hypothyroidism, hypertension, type II diabetes, depression, severe obesity, unstable angina, chronic back pain, and high cholesterol.  (Tr. 304).  Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and counsel appeared for a hearing on February 2, 2023. (Tr. 38-76).  Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id.* The ALJ also received testimony from vocational expert ("VE") James Israel.  *Id.* On March 9, 2023, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 19-31). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  On January 4, 2024, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ committed reversible errors in his decision.  Plaintiff requests that the Commissioner's decision be reversed, and the matter remanded for an award of benefits or for further evaluation.

## II.  Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding

whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities.  If the claimant's impairment is not severe, then he or she is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from

[the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.* In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a

reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted). Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

In a decision dated March 9, 2023, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity since the period from her alleged onset date of March 1, 2021; Plaintiff has the severe impairments of degenerative changes to cervical and lumbar spine, coronary

arteriosclerosis, fibromyalgia, morbid obesity, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) (Tr. at 22); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 22).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b),[2] but that she had the following additional functional limitations:

> She can occasionally climb ramps and stairs, but she should never be required to climb ladders, ropes, and scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid concentered exposure to vibration, fumes, odors, dusters, gases, poorly ventilated areas and hazards, such as moving machinery and unprotected heights. She can perform only simple, routine and repetitive tasks in an environment requiring only simple work-related decisions and with few changes in the routine work setting.  In addition, she can tolerate no more than occasional interaction with supervisors, co-workers, and the public.

 (Tr. 24).

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(a).

At the fourth step, the ALJ found Plaintiff was unable to perform her past relevant work. (Tr. 29). At the fifth step, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including production inspector, assembler, and packer, all of which have an exertion level of light.  (Tr. 30).  At the end of his analysis, the ALJ concluded Plaintiff was not disabled.  (Tr. 31).

## IV.  Discussion

In support of her request for reversal and remand, Plaintiff argues the ALJ made legal errors in that he discounted Plaintiff's subjective reports.  Plaintiff contends that the ALJ summarized the evidence, but he failed to identify inconsistencies between the record and Plaintiff's statement that she was unable to stand and walk for long periods of time.  Plaintiff further argues that the ALJ erred when he found a State agency consultant's opinion to be persuasive but failed to include or take into account a limitation the expert included in her opinion.

### A.    The ALJ's Evaluation of Plaintiff's Subject Complaints of Physical Limitations

Plaintiff argues that the ALJ did not properly evaluate her subjective complaints concerning her physical limitations. Plaintiff points to the fact that she reported to providers that she had difficulty walking, climbing stairs, dressing, and bathing due to her symptoms, and that later in her treatment she described sharp,

shooting and burning pain that was exacerbated by physical activity. She also used a cane and explained at the hearing that she could not work because of pain in her lower back, legs, and feet, and that she could stand no more than 10 minutes, and that it took her 10 to 20 minutes to walk from the car to the store where she used a motorized scooter. She also reported in her Function Report that she had to take breaks to sit down when doing household chores due to chest and back pain.

Plaintiff is correct that the ALJ discounted some of Plaintiff's subjective reporting, and he wrote the following: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinably impairments could reasonably be expected to cause some symptoms; however, her statements concerning the intensity, persistence and limited effects of these symptoms are inconsistent with the evidence in the record … ." (Tr. 25). Plaintiff contends that in his decision, the ALJ summarized the evidence, but she faults the ALJ for failing to identify specific inconsistences in the record that would conflict with Plaintiff's subjective reports, and instead he relied on boilerplate conclusions. The Court does not agree.

The Eighth Circuit instructs "[t]o assess [a claimant's] credibility, the ALJ [must] consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness,

9

and side effects of medication, and functional restrictions." *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) (quotation and citations omitted). That said, "[a]n ALJ is not required to 'explicitly discuss each factor, and we will defer to credibility determinations that are supported by good reasons and substantial evidence.'" *Id.* (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citation omitted). "An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* Furthermore, an ALJ "may rely 'upon discrepancies between [a claimant's] allegations of pain and h[er] treatment history, medicinal selections, and daily activities in disregarding h[er] subjective complaints.'" *Id.* (quoting *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2001)). In evaluating the subjective reports, "the ALJ 'must examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'" *Hahn v. Kijakazi*, No. 1:21-CV-17 SPM, 2022 WL 4534420, at *6 (E.D. Mo. Sept. 28, 2022) (citing SSR 16-3p, 2017 WL 5180304, at *4 (Soc. Sec. Admin. Oct. 25, 2017)).

The ALJ devoted a number of pages of his decision to analyzing Plaintiff's self-reports, her daily activities, her treatment history, the medical evidence, in additional to notes and assessments from Plaintiff's medical providers. And in his

analysis, the ALJ pointed to a number of inconsistencies between Plaintiff's subjective complaints and evidence in treatment notes.  These noted inconsistencies are supported by the record.

For example, the AJL noted that in May of 2021, Plaintiff underwent surgery for the placement of three coronary artery stents.  (Tr. 25).  He noted that the procedure was without complication, and Plaintiff stabilized and was discharged on day five in stable condition.  On discharge, she had clear lungs, no extremity edema or tenderness, and denied any chest wall tenderness. (Tr. 25, 405). The discharging physician advised her only to avoid heavy exertion for one week. (Tr. 25, 408).

When Plaintiff followed up with her cardiologist, Hanumanth Reddy, M.D., the following month in June of 2021, she was "doing well" except for occasional "slight" non-cardiac chest pain (Tr. 464). She denied chest pain with walking (Tr. 464). On examination, she had normal gait and strength with no joint tenderness or edema. (Tr. 25, 464). Dr. Reddy instructed Plaintiff on weight loss, diet modification, and gentle exercise (Tr. 465).

The ALJ also noted in regard to her physical impairments, that in examinations in August through December of 2021, Plaintiff had a normal gait and strength, which is supported by the record and inconsistent with her claims that she has difficulty walking.  (Tr. 26, 477, 493, 611, 615, 631-32, 665).  There are other inconsistencies in treatment notes from this time period as well.  It was noted that

Plaintiff "walks without restrictions," although she has some difficulty doing errands. (Tr. 474, 482-83, 499). During a visit on October 14, 2021, with Erica Smith, M.D., Plaintiff reported a pain level of eight, but she also reported no arthralgias or joint pain, no exercise intolerance, no muscle aches, no muscle weakness, no chest pain or palpitations, no back pain, and no swelling in the extremities. (Tr. 485). During a visit on November 2, 2021, Plaintiff was ambulating normally, and her motor strength and tone, gait and station, movement of all extremities were all normal. (Tr. 477). Further, she reported no exercise intolerance, no shortness of breath. (Tr. 476).

The ALJ noted that in January of 2022, despite her complaint of pain – which in the record was described as "generalized body pain" in addition to low back pain and pain in both legs – Plaintiff demonstrated full muscle strength (5/5) in all her upper and lower extremities – in her arms, legs, grip, finger abduction, and shoulder abduction. (Tr. 26, 828). The provider, Abdul Naushad, M.D., increased Plaintiff's dosages of hydrocodone bitartrate from 6 mg. to 7.5 mg. and Gabapentin from 400 m. to 600 mg., and he kept her on the same dosage of Cyclobenzaprine. Dr. Naushad advised Plaintiff to do home exercise and stretching. Further, there are other inconsistencies from this time period as well. During visits with Dr. Smith in January and February of 2022, Plaintiff again reported that she had no exercise intolerance, no chest pain or palpitations, no shortness of breath, no muscle aches,

no muscle weakness, no arthralgias/joint pain, no back pain, and no swelling in the extremities. (Tr. 792, 800).

In March of 2022, Plaintiff had a consultative examination with Andrew Van Bruggen, D.O. (Tr. 26, 802-06). As the ALJ noted, Dr. Van Bruggen observed that Plaintiff had an unsteady gait and was using a cane for ambulation. (Tr. 26, 804). But this observation contradicted other references to normal gait in the treatment notes from other providers. (Tr. 477, 493, 611, 615, 631-32, 665). Further, as noted by the ALJ, Plaintiff testified that the cane was not prescribed by a doctor. The ALJ also noted that Dr. Van Bruggen noted that upon examination, Plaintiff displayed some tenderness in her knees and lumbar spine, but she was able to tandem walk, walk on her toes and heels, and squat and rise without problems. (Tr. 26). This observation is supported by the record. (Tr. 805). Plaintiff was also able to rise from a seated position without assistance, had no difficulty getting on and off the examination table, could undress and dress herself, and showed no deficiencies with manual dexterity. (Tr. 805). Despite a positive straight leg-raising test on the right at 60 degrees, Plaintiff demonstrated full (5/5) strength in her arms, grip, and legs. (Tr. 26, 808-09). The ALJ found these observations were inconsistent with Plaintiff's claims of significant physical impairments.

The ALJ also noted that at an appointment in May of 2022 Plaintiff described her physical functioning as "better" and her overall functioning as "fair with pain

meds." (Tr. 27, 876).   In June of 2022, Plaintiff also described her physical functioning as "better."  (Tr. 881-82).   Plaintiff's reporting at those appointments is supported by her provider's observations and treatment notes.  At her May of 2022 examination, the pain management provider noted that Plaintiff showed moderate to severe tenderness in her spine, (Tr. 27, 875), but in June of 2022, Plaintiff showed only mild to moderate tenderness in her spine.  (Tr. 880).  At both appointments Plaintiff was encouraged to do home exercises, stretches, and to lose weight.  And at both visits, the provider continued Plaintiff on the same medications with the same dosages.

A lumbar spine MRI in July of 2022 revealed severe facet arthrosis with degenerative anterolisthesis at L4-L5, but only mild spinal canal stenosis at that level and moderate stenosis at L4-S1. (Tr. 27, 821). The ALJ acknowledged these findings, which suggested some back pain, but he concluded that they did not indicate debilitating pain. (Tr. 27).  He noted that although Plaintiff was referred to a neurosurgeon in the summer of 2022 for further evaluation after claiming injections were only giving her one week of pain relief, (Tr. 910), the record does not indicate that Plaintiff ever consulted a surgeon.  (Tr. 27).   This observation is supported by the record.  Furthermore, on July 6, 2022, the day after the MRI was performed, Plaintiff described her level of pain as a four, and she denied tingling or numbness.  (Tr. 27, 884).  Again, she had mild to moderate tenderness in her spine,

and she described her physical function as "better," and her overall functions with medicine as "fair." (Tr. 886, 887-88).  Plaintiff was advised to lose weight and to perform home exercises as tolerated, and the medical provider continued Plaintiff on the same medications with the same dosages. (Tr. 888).

The ALJ noted that in September of 2022, Plaintiff said she had been climbing stairs for exercise, and on examination, she was neurologically intact. (Tr. 27, 901). He also observed that Plaintiff's opiate pain medication was continued at her current dosage, as she said it was effective for her back pain and she deferred having further injections.  (Tr. 27, 903).  Plaintiff was encouraged to continue exercise.  (*Id.*)  In October of 2022, Plaintiff said that she was using a cane, but again as the ALJ noted, Plaintiff testified that the cane was not prescribed by a physician. (Tr. 27, 67, 907). Plaintiff declined physical therapy, but she was encouraged to do home exercises, stretches, and to lose weight. (Tr. 916).  As the ALJ observed, in the treatment notes from this time period, it was noted that Plaintiff would continue with medication as previously prescribed because Plaintiff reported that they were effective.  (Tr. 916). Notably, at every pain management visit in the summer and fall of 2022, Plaintiff reported that her physical functioning was "better" and that her overall functioning was "fair with pain meds." (Tr. 876, 887-88, 902-03, 909, 916)

An ALJ may consider a claimant's daily activities as one of several factors when evaluating her subjective complaints. *See Swarthout v. Kijakazi*, 35 F.4th 608,

611–12 (8th Cir. 2022) (ALJ properly considered the claimant's activities, which included caring for personal hygiene, preparing simple meals, stretching and performing gentle exercises, driving, doing some laundry, and doing household chores in short increments). In addition to the medical evidence, the ALJ discussed Plaintiff's activities, which he found showed a level of independent functioning that was inconsistent with an inability to work. (Tr. 26). In her July 2021 Function Report, Plaintiff said that her activities were taking longer, but she cited no significant difficulty and stated that she required no reminders to tend to her own personal grooming. (Tr. 26, 335).  While Plaintiff said she often took breaks, she performed chores such as washing dishes, doing laundry, and preparing meals. (Tr. 26, 336). She was also able to drive and go out alone to shop for her needs in stores, although during her hearing Plaintiff testified that it took her several minutes to get from her car to the store and inside the store she used a motorized scooter. (Tr. 26, 337).

Plaintiff's argument that the ALJ failed to identify specific inconsistencies between Plaintiff's subjective reports of her inability to stand and walk for long periods and other evidence in the record is without support.  As discussed above, the ALJ considered Plaintiff's improvement after the successful implantation of coronary artery stents; the mixed examination findings, which included tenderness but also normal gait and strength and the ability to squat, rise from a seated position

and get herself on and off the examining table; the evidence that medication was helping Plaintiff's back pain, and the fact that she continued to report that she was doing better.   In addition, the ALJ considered Plaintiff's activities, which included washing dishes, doing laundry, preparing meals, driving, and going out alone to shop for her needs in stores (Tr. 26, 336-37). The ALJ accounted for Plaintiff's symptoms by limiting her to light work with several postural and environmental limitations (Tr. 24). The ALJ provided sufficient analysis of the inconsistencies he noted, and those inconsistencies are supported by the record.  *Wiese v. Astrue*, 552 F.3d 728, 733–34 (8th Cir. 2009) ("Indeed, the ALJ wrote nearly four full pages of analysis regarding the consistency between [plaintiff's] self-reports contained in the record, her treating physicians' notes and assessments, the medical evidence and the hearing testimony.")  The ALJ did not error in discounting to some degree Plaintiff's subject complaints about the intensity, persistence and limited effects of her symptoms.

### A.    The ALJ's Evaluation of Opinion Evidence as to Plaintiff's Mental Limitations

Plaintiff also objects to the ALJ's evaluation of her mental impairments. Plaintiff faults the ALJ for crediting the opinion of an agency psychologist, Maragret Sullivan, Ph.D., but failing to incorporate into Plaintiff's RFC all the limitations Dr. Sullivan identified in her report – more specifically, the limitation that Plaintiff was capable of adapting to changes that are predictable and introduced gradually.

In his decision, the ALJ found Plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, and PTSD.  He found Plaintiff had the RFC to perform light work, but he added additional limitations, including those that take into account Plaintiff's mental impairments.  The ALJ found Plaintiff could perform "only simple, routine and repetitive tasks in an environment requiring only simple work-related decisions and with few changes in the routine work setting.  In addition, she can tolerate no more than occasional interaction with supervisors, co-workers, and the public." (Tr.  24).

In determining Plaintiff's RFC, the ALJ relied on, in part, opinion evidence. The ALJ stated that he did not give controlling weight to any medical opinion, but that he fully considered the evidence.  With regard to Dr. Sullivan, the ALJ noted that she evaluated Plaintiff's medical history in May of 2022, and found moderate limitations on Plaintiff's social functioning, her ability to concentrate, persist or maintain pace and her ability to adapt or manage herself.  The ALJ noted that Dr. Sullivan only found mild limitations on Plaintiff's ability to understand, remember or apply information.  The ALJ found Dr. Sullivan's opinion to be persuasive "[because] a conclusion that [Plaintiff]'s mental impairments are severe but not debilitating is supported by [Plaintiff]'s generally unremarkable mental status examinations throughout the record."  (Tr. 28).

After reviewing Plaintiff's medical records from March of 2021 through April of 2022, Dr. Sullivan opined that Plaintiff "can remember simple one to two step instructions"; that she "retains sufficient mental capacity to carry out two-step commands with adequate persistence and pace[,] but she would struggle with detailed or complex instructions"; that she would "function best in a setting where there is little need for direct supervision or frequent interactions with coworkers and members of the public"; and that she is "capable of adapting to changes, which are predictable and introduced gradually." (Tr. 102-03).

"[T]he ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). Further an ALJ is "not required to adopt the exact limitations set forth in the opinions [he] found persuasive." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023); *see also Burg v. O'Malley*, No. 4:23-CV-00329-SRC, 2024 WL 1253822, at *5 (E.D. Mo. Mar. 25, 2024) (the regulations do not "require the ALJ to mechanically address each part of the prior administrative medical findings or adopt each limitation identified by persuasive medical sources when determining a claimant's RFC.") But when an ALJ does not accept parts of a persuasive medical opinion, the ALJ should explain his reasons for rejecting the evidence that he did not accept. *See Kathryne L. v. O'Malley*, No. 24-CV-4011-LTS-KEM, 2024 WL 4819441 at *3 (N.D. Iowa Nov. 18, 2024), *report and recommendation adopted,* No. C24-4011-LTS-KEM, 2024

WL 4988979 (N.D. Iowa Dec. 5, 2024); *Carey v. O'Malley*, No. 4:23-CV-00860-NCC, 2024 WL 4238691, at *5 (E.D. Mo. Sept. 19, 2024) (collecting cases and noting "courts have frequently found remand required where an ALJ finds a medical opinion persuasive, yet declines to include some of the limitations found in that opinion in that RFC and does not explain why"). This is a logical extension of the Eighth Circuit's decision in *Gann v. Berryhill*, in which the court held the ALJ erred by assigning "significant weight" to medical opinions, but then failing to include in the RFC "adaptation restrictions" recommended by those medical opinions. 864 F.3d 947, 952-53 (8th Cir. 2017). *Gann* involved the old regulations for evaluating medical opinions, but the change from evaluating opinions by assigning weight to determining persuasiveness does not affect the reasoning in *Gann*.

In determining Plaintiff's mental RFC, the ALJ discussed the mental health treatment records. See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (ALJ considers the treatment a claimant receives for relief of symptoms). As the ALJ noted, in January of 2022, Plaintiff reported nightmares, poor sleep, and crying spells due to a history of severe trauma. (Tr. 26, 683-84). On examination, she was tearful and dysthymic, but she was adequately groomed with normal speech and concentration and appropriate thought process. (Tr. 26, 683). When she followed up in February of 2022, she continued to report nightmares, but she said she was "doing better." (Tr. 26, 792). She reported improved mood and depressive symptoms with

the addition of Abilify to her medication regimen. (Tr. 26, 792). *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (8th Cir. 2015) ("The notes also indicate her mental conditions improved with the proper medications."). On examination, Plaintiff displayed irritable mood, but she was well-groomed, cooperative, calm, and pleasant with intact memory, insight, judgment, and thought process. (Tr. 793). Her medications were increased "for optimum symptom control." (Tr. 26, 793).

In June of 2022, Plaintiff stated that her depression, anxiety, and PTSD were "well controlled with current medications." (Tr. 27, 879). She denied any medication side effects. (Tr. 27, 882). In August of 2022, Plaintiff was living with friends and was no longer experiencing nightmares after an increase in Prazosin. (Tr. 27, 1004). She reported that her moods had been better, and she was feeling happier with no prolonged depressed moods. (Tr. 27, 1004). She was still tolerating her medications with no side effects (Tr. 27, 1004). In September of 2022, Plaintiff again told her pain management provider that depression, anxiety, and PTSD were "well controlled" with medications. (Tr. 900). *See Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.") (citation omitted).

The following month, in October 2022, Plaintiff said she had been stable, as "things [were] going good." (Tr. 27, 1102). She was doing well in counseling and had developed some coping skills to help her "manage her life differently." (Tr.

21

1102). She admitted that her mental health symptoms were related to situational factors. (Tr. 27, 1102*). See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (ALJ properly concluded that claimant's depression was situational in nature, related to marital issues, and improved with a regimen of medication and counseling). As the ALJ noted, Plaintiff's mental status examination in October 2022 was "completely normal." (Tr. 27, 1103).

Plaintiff was feeling anxious and depressed during a therapy session in November 2022, but again, her symptoms were situational. (Tr. 27, 1136). She had moved to Missouri to be with her grandchildren, but she was moving to Alabama because her daughter did not want her to live with her. (Tr. 27, 1136). Aside from depressed mood, Plaintiff's mental status examination findings were normal. (Tr. 27, 1135). Plaintiff was cooperative with logical thought process and intact insight and judgment. (Tr. 27, 1135).

Given the evidence of Plaintiff's improvement with treatment, her well-controlled symptoms, her normal examinations, and her admission that her symptoms were situational, the ALJ reasonably found that a range of unskilled work with few changes in the routine work setting was sufficient to account for Plaintiff's mental impairments. (Tr. 24). As for Plaintiff's argument that the ALJ erred because he failed to include the limitation "capable of adapting to changes, which are predictable and introduced gradually" in Plaintiff's RFC or explain why he did not,

the ALJ noted in a preceding section of his decision that Plaintiff "denied any difficulty handling changes in routine," and that she also "denied any problems paying attention or following written and spoken instructions," statements that are supported by evidence in the record.  (Tr. 23).  Although this information is contained in another part of his decision, the Court finds the ALJ has adequately explained in his decision why he did not adopt the limitation that Plaintiff is only capable of adapting to changes, which are predictable and introduced gradually, in Plaintiff's RFC.  *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (an ALJ's reasoning need only be "clear enough to allow for appropriate judicial review"); *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019) ("a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."); *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (find an ALJ's failure to elaborate on his conclusion that a claimant's impairments do not meet a certain listing is not reversible error if the record supports the conclusion).  S*ee also Trosper v. Saul*, No. 1:20-CV-51-DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021) ("finding "[w]hen the decision is read in its entirety, instead of only the single paragraph addressing [the provider's] opinion read in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion.").   The Court finds that the ALJ properly evaluated Dr.

Sullivan's opinion, and his determination as to Plaintiff's RFC in light of her mental impairments is supported by substantial evidence in the record.

## V.  Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'"  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)).  The Court finds that in determining Plaintiff's RFC, the ALJ properly evaluated the evidence in the record, including Plaintiff's subjective complaints of physical impairments and the opinion evidence of the agency consultant regarding mental impairments. The ALJ's RFC determination and ultimately his conclusion that Plaintiff is not disabled is supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

Dated this 26th day of March, 2025.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE